**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHARTIS PROPERTY & CASUALTY
COMPANY and AMERICAN HOME
ASSURANCE COMPANY,

      Plaintiffs,

v.                                                            Case No: 8:12-cv-2087-T-30MAP

JOHN D. JASSY, KAREN K. JASSY,
JASON KUHN and COURTNEY
MCDERMOTT,

      Defendants.

_____

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Summary Judgment (Dkt. #30), Defendants John D. Jassy and Karen K. Jassy's Dispositive Motion for Summary Judgment (Dkt. #53), Defendants Jason Kuhn and Courtney McDermott's Cross-Motion for Summary Judgment (Dkt. #45) and the Responses and Reply filed in opposition thereto (Dkts. #44, #45, #50, #51, #59).  It is the Court's conclusion that the Plaintiff's Motion should be granted.

### *Background*

Chartis Property & Casualty Company ("Chartis") and American Home Assurance Company ("American Home") filed this lawsuit for a declaratory judgment to determine whether they have a duty to defend and indemnify John D. Jassy and Karen K. Jassy

against allegations in a state court action styled *Kuhn v. Chris Campbell Builder, LLC f/k/a Chris Campbell Builder, Inc., et. al.,* Hillsborough County Circuit Court Case No. 12-CA-13029 (the "Underlying Action").  The Underlying Action arose out of the Jassys sale of their home to Defendants Jason Kuhn and Courtney McDermott. The Underlying Action contains five different causes of action against the Jassys, Count XI for breach of contract, Count XII for breach of covenant of good faith and fair dealing, Count XIII for negligent misrepresentation, Count XIV for negligence and Count XV for fraudulent misrepresentation.

The Jassys entered into a contract with Chris Campbell Builders, Inc., to construct a home. The builder acquired "Chinese Drywall" and installed it into the home. The Jassys occupied the home for three years before selling it to Kuhn and McDermott. They allege in their Second Amended Complaint that upon moving into the home, they noticed the "corrosive effect of exposure to Chinese Drywall and have suffered damage to personal and real property as a result of Defendants' conduct."

The Jassys had two homeowner's insurance policies and one personal excess liability policy that were cumulatively effective from June 5, 2010, to August 10, 2012. American Home issued the original homeowner's insurance policy effective from June 5, 2010, to June 5, 2011. The Jassys renewed that policy through Chartis effective from June 5, 2011, to June 5, 2012. The policy was cancelled on September 1, 2011, upon the sale of the property to Kuhn and McDermott. American Home issued a policy to the Jassys effective from November 12, 2011, to November 12, 2012; the Jassys cancelled that policy on August 10, 2012.   These policies are collectively referred to as the

"homeowner's insurance policies."  The homeowner's insurance policies provide both property protection and liability protection to the Jassys.  Additionally, Chartis issued a personal excess liability policy to the Jassys effective from June 5, 2010, to June 5, 2011. The Second Amended Complaint does not allege specific dates for the alleged property damage.

The homeowner's insurance policies contain the same relevant language; they provide that the insurer "will pay the costs to defend an insured person against any suit seeking covered damages for personal injury or property damage, even if the suit is false, fraudulent or groundless." The policies also provide that the insurer will indemnify the Jassys and "pay damages an insured is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy…." The policies define "occurrence" to mean a "loss or accident" or an "offense" occurring during the policy period and "property damage" to mean "physical injury to, destruction of, or loss of use of tangible property and the resulting loss of its use." The only applicable exclusion in the homeowner's insurance policies' liability protection is for intentional acts as provided below:

Intentional Acts

Personal injury or property damage resulting from any criminal, willful, intentional or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

The excess liability policy has very similar language and limits coverage to damages that are in excess of damages covered by an underlying insurance policy or where underlying insurance exists but coverage does not apply for a particular occurrence. The excess liability policy also has a slightly different exclusion clause specifically excluding coverage for acts:

> Arising out of any criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person, or the gaining of any profit or advantage to which an insured person is not entitled. We will not cover any amount for which the insured person is not financially liable or which are without legal recourse to the insured person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury.

> This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

Chartis and American Home argue that Kuhn and McDermott's causes of action, as alleged against the Jassys in the Underlying Action are either not covered by the policies or qualify for the intentional act exclusions. They therefore argue that they have no duty to defend or indemnify.

### *Discussion*

### I.    Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id*. at 255. Under Florida law, when assessing an insurance dispute, the insured has the burden of proving that a claim against it is covered by the policy, and the insurer has the burden of proving an exclusion to coverage. *Great Am. Assur. Co. v. Elliott*, 846 F. Supp. 2d 1258 (M.D. Fla. 2012) aff'd, 511 Fed. Appx. 868 (11th Cir. 2013).

## II.    The Interpretation and Construction of Insurance Contracts in Florida

In diversity cases, a federal court applies the law of the forum in which it sits. *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir. 1983). Thus, in resolving the motions, the Court looks to Florida law. "Florida adheres to the rule that the legal effects of terms of the insurance policy and rights and obligations of persons insured thereunder are to be determined by the law of the state where the policy was issued*." See LaTorre v. Conn. Mut. Life Ins. Co*., 38 F.3d 538, 540 (11th Cir. 1994) (citing *Wilson v. Ins. Co. of N. Am*., 415 So. 2d 754, 755 (Fla. 3d DCA 1982)). The

parties agree that Florida law governs this insurance dispute since the policies were issued to the Jassys in Florida.

The interpretation and construction of an insurance contract is a question of law to be decided by the Court using generally accepted rules of contract construction. *U.S. Fire Ins. Co. v. J.S. U.B., Inc*., 979 So. 2d 871, 877 (Fla. 2007). In Florida, insurance provisions granting coverage are to be construed broadly, while exclusions are to be read narrowly. *Westmoreland v. Lumbermens Mut. Cas. Co*., 704 So. 2d 176, 179 (Fla. 4th DCA 1997).  Insurance contracts are to be interpreted and construed in a manner that is "reasonable, practical, sensible, and just." *Doctors Co. v. Health Mgmt. Assocs., Inc.,* 943 So. 2d 807, 809 (Fla. 2nd DCA 2006). Terms are to be given their plain and ordinary meaning and the language of the policy will control unless such language is ambiguous. *Bethel v. Sec. Nat'l Ins. Co.*, 949 So. 2d 219, 222 (Fla. 3d DCA 2006).

An insurer's duty to defend is to be determined from the allegations in the complaint against the insured. *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533 (Fla. 1977). The insurer must defend if the allegations in the complaint could bring the insured within the policy provisions of coverage. *State Farm Mutual Auto. Ins. Co. v. Universal Atlas Cement Co*., 406 So. 2d 1184 (Fla. 1st DCA 1981), rev. denied, 413 So. 2d 877 (Fla. 1982). *See also Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp.,* 487 So. 2d 1051, 1054 (Fla. 1986) (a liability insurance carrier must defend the insured only when the initial pleadings fairly bring the case within the scope of coverage). If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit. *Tropical Park,*

*Inc. v. United States Fidelity and Guaranty Co.*, 357 So. 2d 253, 256 (Fla. 3d DCA 1978). The duty to defend is separate and apart from the duty to indemnify and the insurer is required to defend the suit even if the true facts later show there is no coverage. *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So. 2d 611 (Fla. 4th DCA 1982). All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So. 2d 810, 814 (Fla. 1st DCA 1985); *Lawyers Title Ins. Corp.*, 52 F.3d at 1580 (under Florida law, "[i]f an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured.") "However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003) review denied, 885 So. 2d 389 (Fla. 2004).

### III.    The Allegations in the Underlying Action

Chartis and American Home argue that the Second Amended Complaint does not allege "property damage" caused by an "occurrence" according to the terms of the policies.  Therefore, the Second Amended Complaint does not trigger their duty to defend the lawsuit on behalf of the Jassys. In the alternative, the insurers argue that even if the Second Amended Complaint alleges an "occurrence" which caused "property damage," the allegations trigger the "intentional act" exclusion in all of the policies.

The Second Amended Complaint alleges several causes of action against the Jassys. Kuhn and McDermott allege in their breach of contract claim that the existence of the Chinese Drywall materially diminished the value of the home and they incurred costs

for the necessary repairs. This allegation is not sufficient because economic injury does not allege "property damage" under the policies. *See Colony Ins. Co. v. Montecito Renaissance, Inc.,* 2011 WL 4529948 *3 (M.D.Fla. 2011) (citing *Mullin v. Travelers Indemnity Co. of Connecticut*, 541 F.3d 1219, 1223–24 (10th Cir. 2008). Further the breach of covenant of good faith and fair dealing, negligent misrepresentation and fraudulent misrepresentation claims all allege intentional acts by the Jassy's and therefore fall squarely into the intentional act exclusions of all three policies.

The Jassys and Kuhn and McDermott argue that the negligence claim triggers a duty to defend because it supports the conclusion that an "occurrence" caused "property damage" as defined in the policies; and that this cause of action does not fall within the intentional act exclusions.  The allegations state that "the Jassys owed a duty of due care to Kuhn and McDermott in connection with their dealings with Kuhn and McDermott relating to the sale of the home," and that they breached that duty of care.  They allege that the breach was the proximate cause of the property damage suffered by Kuhn and McDermott, including physical injury to, destruction, loss of use, replacement and repair of "personal property, furnishings, electronic appliances and other metal surfaces and household items."

The negligence count does not specifically allege an "occurrence" that caused "property damage," but the Court will assume an amendment could remedy that issue. However, that is not the only deficiency. Alleging an "occurrence" caused "property damage" is a conclusion without underlying facts.

Kuhn and McDermott's cause of action ultimately arises from and is the result of the Jassys' failure to disclose the existence of the Chinese Drywall in the home. In viewing the Second Amended Complaint as a whole, the only negligence possible under these set of facts would be the Jassys' negligence in not discovering the Chinese Drywall and disclosing that discovery to Kuhn and McDermott.

Under Florida law, the Jassys had no duty to discover the Chinese Drywall. The Florida Supreme Court has limited a seller's duty to disclose to situations where "the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer." *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985). Thus, the seller of a home is liable only for failing to disclose material defects of which he is aware. *Id*. at 628. Even if Kuhn and McDermott allege that the Jassys "should have known" of the Chinese Drywall, the claim is still based on a failure to disclose. That claim would be based on fraud, which is clearly excluded under the insurance policies. *See Jensen v. Bailey*,[1] 76 So. 3d 980, 986 (Fla. 2d DCA 2011) (holding that a seller's liability to a purchaser for failing to disclose a material defect cannot be based on a finding of the vendor's constructive knowledge of the defect, the seller must have actual knowledge of the defect.)

---

[1] The *Jensen* court clarified the holdings in *Nystrom v. Cabada*, 652 So. 2d 1266 (Fla. 2d DCA 1995) and *Revitz v. Terrell*, 572 So. 2d 966 (Fla. 3d DCA 1990) by stating that although the cases used the term "should have known" in the orders, the term was used as shorthand to reference circumstantial evidence establishing actual knowledge. *Jensen*, 76 So. 3d at 985. To establish liability under *Johnson*, the buyer must provide proof of the seller's actual knowledge of the defect. *Id*. at 986.

Since the negligence allegation against the Jassys is based entirely on the Jassys failure to disclose the Chinese Drywall, and the Jassys could only be liable for omissions of material facts of which they were aware at the time of the sale, the claim falls under the intentional act exclusions. *See CDC Builders, Inc. v. Amerisure Mutual Ins. Co.*, 2011 WL 4454937 (S.D.Fla. 2011) (since all of the underlying claims were based entirely on the release of gases and toxins, regardless of causes of action alleged, the complaint fell under the insurance policy's pollution exclusion).  *See also Hawk Termite & Pest Control, Inc. v. Old Republic Ins. Co.*, 596 So. 2d 96 (Fla. 3d DCA 1992) (holding that insurer did not have a duty to defend under the termite company's insurance policy because the claim for negligence was really a claim for poor workmanship which was expressly excluded in the policy).

Further, "wording alone in a pleading in a suit against the insured does not create a duty to defend by the liability insurer, regardless of its artfulness." *Tippett*, 864 So. 2d at 34.  In *Tippett*, the court found that there was no duty to defend where the plaintiff in the underlying action made an allegation that was unreasonable and illogical in an attempt to avoid the "intentional injury" exclusion in the policy.  *See also Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000) (stating that the use of "buzz words" in a complaint will not trigger coverage when the cause of action is for a non-covered act); *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) ("[c]onclusory 'buzz words' unsupported by factual allegations are not sufficient to trigger coverage.") Similarly here, Kuhn and McDermott allege negligence

as a "buzz word" in their Second Amended Complaint in an attempt to invoke coverage where none exists.

The right to an early resolution of a coverage issue should turn on the merits of whether a policy exclusion applies and not on creative pleading. *Tippett*, 864 So. 2d at 35-36 (citing *State Farm v. Higgins*, 788 So. 2d 992, 1005 (Fla. 4th DCA 2001)). *See also Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) ("creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint") review denied, 553 So.2d 1166 (Fla. 1989); *Underwriters at Lloyd's of London v. McCaul*, 949 So. 2d 1137, 1138-39 (Fla. 3d DCA 2007) (holding that although plaintiffs "creatively characterized" their theory of liability, the claim "arose out of" the use or operation of vehicle which was excluded from policy coverage.)

## *Conclusion*

The Jassys' homeowner's insurance policies and excess liability coverage policy do not provide coverage for the Underlying Action. The Second Amended Complaint alleges causes of action which all arise from acts that do not fall within the policy coverage or are excluded from coverage based on the intentional act exclusions. Chartis and American Home have no duty to defend the Underlying Action on behalf of the Jassys; therefore there is no corresponding duty to indemnify. *Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 233 (Fla. 3d DCA 1979) ("[i]t has thus been uniformly held that a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be

entered upon that claim"); *WellCare of Florida, Inc. v. American International Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009) ("the duty to indemnify is narrower than the duty to defend and thus cannot exist if there is not duty to defend.")

It is therefore ORDERED AND ADJUDGED that:

1.  Plaintiffs' Motion for Summary Judgment (Dkt. #30) is granted.

2.  Defendants John D. Jassy and Karen K. Jassy's Dispositive Motion for Summary Judgment (Dkt. #53) is denied.

3.  Defendants Jason Kuhn and Courtney McDermott's Cross-Motion for Summary Judgment (Dkt. #45) is denied.

4.  The Clerk is directed to enter judgment in favor of Plaintiffs and against the Defendants.

5.  All pending motions are denied as moot.

6.  The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 4th day of November, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2012\12-cv-2087 msj 30 53.docx